COPY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

TYREEK SHUFORD,

                      Plaintiff,

    – against –

CITY OF NEW YORK; New York City Department of
Correction (DOC) Commissioner MARTIN F. HORN;
DOC Chief of Department CAROLYN THOMAS; DOC
Deputy Commissioner RICHARD R. WHITE; GREGORY
MCLAUGHLIN, DOC Warden at Robert N. Davoren Complex;
DOC Officer JAMES DAVIS, Shield 14677; DOC Officer
TAWANN GUICE, Shield 15437; DOC Officer DARLENE
SANDERS, Shield 9591; and DOC Officers JOHN/JANE
DOES #1-5,

                      Defendants.

----------------------------------------------------------------x

09 CIV 00945

COMPLAINT AND
JURY DEMAND

[FILED FEB 03 2009 U.S.D.C. S.D.N.Y. CASHIERS]

ECF CASE

        Plaintiff Tyreek Shuford ("Plaintiff"), by his attorneys Emery Celli Brinckerhoff & Abady LLP and The Legal Aid Society, for his Complaint, alleges as follows:

**PRELIMINARY STATEMENT**

        1.     Tyreek Shuford is the teenage victim of a perverse and pervasive practice, sanctioned at the highest levels of the New York City Department of Correction (the "Department" or "DOC"), in which correction officers at a New York City jail engage inmates to assault other inmates as a way to control and discipline those held in custody. This practice has been uncovered and substantiated by investigations of the New York City Department of Investigation and the DOC's Inspector General and has resulted in two indictments in the last year of correction officers who worked in Robert N. Davoren Complex ("RNDC"), the same

Rikers Island youth facility where Mr. Shuford was assaulted. In October 2008 an RNDC inmate died as a result of sanctioned inmate-on-inmate violence.

2. The Bronx District Attorney ("DA") has explained that RNDC was run like an organized-crime family, where correction officers, under a system known as "The Program," would give "favored prisoners free reign to beat, rob and extort whomever they please" — to quote the outraged Daily News editorial. RNDC was an "incubator for violent criminal activity sanctioned by adults in positions of authority," according to the DA. The motive for this brutality was to make correction officers' jobs easier by having the inmates maintain order among themselves.

3. In a January 29, 2009 editorial, The New York Times described this as a "horror story." The Times demanded that "the entire culture" of RNDC "needs to be changed" and laid the blame squarely on the City for failing to properly train and supervise correction officers.

4. As a result of this practice of sanctioning inmate fights, in March 2007, Mr. Shuford was assaulted by other inmates whom the defendant correction officer had authorized to maintain order. Though the correction officers' duty was to protect Mr. Shuford and the other youth, they simply watched the beating. These officers later refused to provide Mr. Shuford medical attention to treat his serious injuries.

5. Less than one month later, Mr. Shuford was again assaulted, this time at the hands of the officers themselves. For no apparent reason or provocation, a correction officer viciously assaulted Mr. Shuford while other officers stood by and did nothing.

6. As a result of these beatings, Mr. Shuford suffered multiple nasal bone fractures, a left orbital fracture, depressed zygomatic fracture, and multiple cuts and bruises to his face and body.

7. This latter assault is consistent with a longstanding practice at DOC where officers use excessive and injurious force on inmates without any fear of punishment or discipline. This practice is well-known throughout the Department and has been the subject of numerous class actions and court-approved reform efforts. Regrettably those efforts have not ended the practice nor did they protect Mr. Shuford. This action followed.

## JURISDICTION AND VENUE

8. This action arises under the Fourteenth Amendment to the United States Constitution and under 42 U.S.C. §§ 1983 and 1988.

9. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3)-(4) and 1367(a).

10. The acts complained of occurred in the Southern District of New York and venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b).

## JURY DEMAND

11. Mr. Shuford demands trial by jury in this action.

## PARTIES

12. Tyreek Shuford is a citizen of the United States and is currently imprisoned at the Mid-State Correctional Facility. At the time these events occurred, Mr. Shuford was 17 years old. He was a pre-trial detainee in DOC custody at RNDC on Rikers Island in East Elmhurst, New York.

13. Defendant City of New York ("City") is a municipal corporation which,

3

through its Department of Correction, operates a number of detention facilities. The Department, through its senior officials at the central office, in each facility, and in its specialized units, promulgates and implements policies, including those with respect to the use, reporting and investigation of force by uniformed staff and inmates, and access to medical and other program services mandated by local law and court orders. In addition, senior officials in the Department are aware of and tolerate certain practices by subordinate employees in the jails, including those that are inconsistent with formal policy. These practices, because they are widespread, long-standing, and deeply embedded in the culture of the agency, constitute unwritten Department policies or customs. The Department is also responsible for the appointment, training, supervision, and conduct of all DOC personnel, including the defendants referenced herein.

14. At all times relevant hereto, Martin Horn was the Commissioner of DOC, acting in the capacity of agent, servant, and employee of the City, within the scope of his employment as such, and acting under color of state law. On information and belief, defendant Horn, as Commissioner of DOC, was responsible for the policy, practice, supervision, implementation, and conduct of all DOC matters and was responsible for the training, supervision, and conduct of all DOC personnel, including the defendants referenced herein. As Commissioner, defendant Horn is also responsible for the care, custody, and control of all inmates housed in the Department's jails. As Commissioner, Horn was provided on a daily basis with reports of applications of force, allegations of unreported use of force, and other breaches of security in the Department jails. In addition, at all relevant times, defendant Horn was responsible for enforcing the rules of the DOC, and for ensuring that DOC personnel obey the laws of the United States and of the State of New York. Defendant Horn is sued in his individual capacity.

15. At all times relevant hereto, Carolyn Thomas was the Chief of Department of DOC, acting in the capacity of agent, servant, and employee of the City of New York, within the scope of her employment as such, and acting under color of state law. As Chief of Department, she was the highest ranking uniformed member of the department, and was responsible for the supervision, oversight, and discipline of the uniformed security staff in all the Department jails. She was also responsible for the care, custody, and control of all inmates in the Department jails. As Chief of Department, Thomas is provided on a daily basis with reports of applications of force, allegations of unreported use of force, and other breaches of security in Department jails. Defendant Thomas is sued in her individual capacity.

16. At all times relevant hereto, Richard R. White was the Deputy Commissioner of the Department, Investigation Division. As Deputy Commissioner, his responsibilities included supervising the investigation of any and all incidents in which any employee of the Department used force against any inmate, or is alleged to have used force, and recommending Department discipline against staff believed to have violated Department policies and rules including those concerning use of force. Defendant White was provided on a daily basis with reports of applications of force, allegations of unreported use of force, and other breaches of security in Department jails. Defendant White is sued in his individual capacity.

17. At all times relevant hereto, defendant Gregory McLaughlin was the Warden of RNDC, acting in the capacity of agent, servant, and employee of defendant City, within the scope of his employment as such, and acting under color of state law. On information and belief, defendant McLaughlin, as Warden of RNDC, was responsible for supervising correction officers, captains, and other supervisors with respect to the care, custody, and control of inmates confined at GRVC. These responsibilities were required to be carried out in a manner

consistent with the legal mandates that govern the operation of the DOC facilities, including Department policies, procedures, directives and protocols. Defendant McLaughlin is sued in his individual capacity.

18. Defendants Horn, Thomas, White, and McLaughlin are collectively referred to as the "Supervisory Defendants."

19. At all times relevant hereto, defendant James Davis, Shield 14677, was a correction officer within the DOC, acting in the capacity of agent, servant, and employee of defendant City, within the scope of his employment as such, and acting under color of state law. On information and belief, defendant Davis worked at RNDC at the time of the incidents alleged herein, and participated or witnessed and failed to intervene in the beating of Mr. Shuford on April 15, 2007. Defendant Davis is sued in his individual capacity.

20. At all times relevant hereto, defendant Tawann Guice, Shield 15437, was a correction officer within the DOC, acting in the capacity of agent, servant, and employee of defendant City, within the scope of his employment as such, and acting under color of state law. On information and belief, defendant Guice worked at RNDC at the time of the incidents alleged herein, and participated or witnessed and failed to intervene in the beating of Mr. Shuford on April 15, 2007. Defendant Guice is sued in his individual capacity.

21. At all times relevant hereto, defendant Darlene Sanders, Shield 9591, was a correction officer within the DOC, acting in the capacity of agent, servant, and employee of defendant City, within the scope of his employment as such, and acting under color of state law. On information and belief, defendant Sanders worked at RNDC at the time of the incidents alleged herein, and participated or witnessed and failed to intervene in the beating of Mr. Shuford on April 15, 2007. Defendant Sanders is sued in her individual capacity.

22. At all times relevant hereto, Correction Officers John/Jane Does # 1-5 (collectively referred to herein as the "Doe Defendants"), whose actual names and shield numbers plaintiff has been unable to ascertain notwithstanding reasonable efforts to do so, but who are sued herein by the fictitious designation "John Doe" and "Jane Doe," were officers of DOC, acting in the capacity of agents, servants, and employees of Sanders, within the scope of their employment as such, and acting under color of state law. On information and belief, the Doe Defendants worked at RNDC on or about March 28, 2007 and failed to intervene in the assault on Mr. Shuford by inmate assailants that took place on or about March 28, 2007. The Doe Defendants are sued in their individual capacities.

## STATEMENT OF FACTS

### I. RNDC: A History of Correction Officers Sanctioning Inmate Fights

23. For years, through Department reports, civil litigation, and two criminal indictments, the City and the Supervisory Defendants have been aware of the routine, dangerous and unconstitutional sanctioning of inmate-on-inmate violence at RNDC. In many instances, DOC staff instigated, encouraged or sanctioned the use of inmate enforcers to discipline other inmates. That practice caused Mr. Shuford's injuries.

24. RNDC is a facility for male youths (principally housing 16, 17 and 18 year old boys) and, as such, officer-sanctioned violence against these boys is particularly pernicious.

25. On April 16, 2007, according to allegations in a related case pending before this Court, *Douglas v. City of New York*, 07-CV-8443, Camillo Douglas and Luis Soriano, two RNDC inmates, were beaten by other inmates.

26. According to the allegations in the *Douglas* Complaint, these beatings were sanctioned by the correction officers in that: (1) at first, all the cells were locked and a

correction officer only opened Mr. Douglas's cell, enabling three inmate porters who were members of the Bloods gang, to enter and attack Mr. Douglas with broomsticks and metal shanks; (2) while Mr. Douglas was being beaten, a correction officer unlocked all the inmates' cells, enabling additional members of the Bloods gang to beat Mr. Douglas and Mr. Soriano (who had attempted to aid Mr. Douglas); and (3) not a single correction officer attempted to intervene to protect either Mr. Douglas or Mr. Soriano.

27. On February 14, 2008, the Bronx District Attorney ("DA") indicted correction officer Lloyd Nicholson at RNDC, for using inmates as enforcers and encouraging inmate-on-inmate violence. The DA charged Officer Nicholson with gang assault, assault, and official misconduct, in connection with a scheme to use teenage inmates to enforce discipline at RNDC. According to the DA's press release, the "grand jury charged Nicholson with 'acting in concert' in causing physical injury to two inmates on June 10, 2007 by ordering six other inmates to beat them. One of the two victims sought medical attention and was taken to Elmhurst Hospital for treatment of a collapsed lung. It is also alleged that on an earlier occasion between May 18 and May 25, 2007, Nicholson personally assaulted a third inmate with a wooden stick." *See* New York City Correction Officer Charged With Gang Assault For Allegedly Ordering Inmates On Rikers Island To Beat Fellow Detainees At The City Jail, *at* http://bronxda.nyc.gov/information/2008/case9.htm .

28. This indictment was the result of investigations by the New York City Department of Investigations and the Inspector General for DOC which, according to the DA, "uncovered a systematic program allegedly run by Nicholson, in which he would use a select group of inmates to maintain order and enforce discipline. The group of inmates would enforce rules of conduct established by Nicholson in exchange for preferential treatment, which included

allowing them to extort commissary and telephone privileges as well as personal property from other inmates. It is alleged that Nicholson benefited by not having to constantly monitor his post during his overnight tour of duty." *Id.*

29. On October 17, 2008, teenage inmate Christopher Robinson died at RNDC, while under the supervision of the DOC, after being beaten by other inmates.

30. The Bronx DA has alleged that Mr. Robinson was "brutally beaten because of his refusal to go along with a violent extortion enterprise against adolescent inmates which was jointly operated by the indicted correction officers and their teenage accomplices."

31. On information and belief, Mr. Robinson — like Mr. Shuford — did not receive medical attention immediately after being beaten, but instead bled in his cell for hours.

32. The investigation into Mr. Robinson's death revealed that nine separate officer-sanctioned beatings, of nine separate adolescent inmates, had occurred since July 2008.

33. On January 22, 2009 the Bronx DA indicted three RNDC correction officers for conspiracy, enterprise corruption, and/or assault. The DA, in his press release, alleged that correction officers "acted as managers for an organization referred to as 'the Program'" at RNDC. *See* The Death Of An 18-Year-Old Inmate on Rikers Island Last October Leads To Numerous Criminal Charges Against Three Correction Officers And Twelve Teenage Inmates, *at* http://bronxda.nyc.gov/information/2009/case3.htm .

34. Under "the Program," correction officers "would cede responsibility for maintaining order to inmates known as 'the Team' whom they personally selected." The Team would "maintain order" and, in exchange, the officers authorized the Team to extort property from other inmates. "Inmates who refused to go along with the Program were punished by being assaulted" by the Team. The officers would generally "designate the date, time, location and

9

manner of the 'beatdown.'"

  35. As part of "the Program," the officers would conceal evidence of these crimes by "failing to intervene or stop the inmate assaults, making false reports about the assaults or directing inmate victims to make false reports regarding the assaults or acts of extortion, and by using violence or the threat of violence to ensure the victims' continued participation in the Program."

  36. Defendant Horn, in testimony before the City Council, admitted that while certain guards receive additional training for dealing with an adolescent population, the vast majority of inmates are supervised by guards without such training.

  37. RNDC is not the only facility at Rikers where guards sanction inmate-on-inmate violence. According to press reports, Roger Cullen, a former correction officer at the Anna M. Kross Center ("AMKC"), a facility on Rikers Island, testified under oath about an inmate-on-inmate assault at AMKC in 2003. Cullen testified that the inmate assailant had essentially been deputized as an enforcer by correction officers to control the other inmates.

  38. Through DOC's elaborate reporting system, the City and the Supervisory Defendants were aware of the pattern of a large number of incidents involving inmate-on-inmate violence and have failed to take sufficient steps to curb these beatings.

  39. The City and the Supervisory Defendants were also aware, or should have been aware, which staff members were involved in incidents in which inmates were injured by other inmates, yet, notwithstanding that information, they have failed to take sufficient steps to curb these beatings.

  40. The City and the Supervisory Defendants were also aware, or should have also been made aware of the failure of the Department to bring disciplinary charges against those

officers who sanction or ignore inmate-on-inmate violence, punish staff that sanction such violence, and discourage others from doing so.

41. Through all these cases and Department reports, the City and the Supervisory Defendants have been made aware of the widespread practice by DOC staff of sanctioning or encouraging violence against inmates. They have also been made aware of the failures of DOC's Investigation Division to adequately investigate allegations of correction officers' complicity in such beatings, a practice that causes further abuse.

## II. New York City's Jails: A History of Abuse

42. For decades, through Department reports and civil litigation, DOC has been aware of the routine, dangerous and unconstitutional use of excessive force by staff at individual facilities in the large, multi-jail DOC.[1] In many instances, DOC staff brutally beat prisoners to punish them for having "disrespected" staff, or because the staff believes they were "disrespected" by the prisoner. That is what happened to the plaintiff in this case.

43. For example, *Sheppard v. Phoenix*, 210 F. Supp. 2d 250 (S.D.N.Y. 1998) (terminating injunction), a class action, unearthed abuse of prisoners and its cover-up sufficiently serious to merit criminal prosecutions of DOC staff members. Similarly, *Ingles v. Toro*, 438 F. Supp. 2d 203 (S.D.N.Y. 2006) (approving stipulation of settlement), a system-wide class action, revealed significant numbers of credible excessive force complaints from prisoners who had been seriously injured by staff in the City jails.

---

[1] *See, e.g., Fisher v. Koehler*, 692 F. Supp. 1519 (S.D.N.Y. 1988), *injunction entered*, 718 F. Supp. 1111 (1989), *aff'd*, 902 F.2d 2 (2d Cir. 1990) (Correction Institution for Men); *Jackson v. Montemagno*, 85 Civ. 2384 (AS) (E.D.N.Y.) (Brooklyn House of Detention); *Reynolds v. Ward*, 81 Civ. 101 (PNL) (S.D.N.Y.) (Bellevue Prison Psychiatric Ward); *Sheppard v. Phoenix*, 91 Civ. 4148 (RPP) (S.D.N.Y.) (Central Punitive Segregation Unit).

44.     On June 1, 2007, the Bronx DA indicted an Assistant Deputy Warden and a Captain for an egregious cover-up of a staff assault at RNDC in connection with an incident that occurred on October 4, 2006. The indictment alleged that Captain Sherman Graham struck inmate Brian Mitchell without provocation in the presence of 15 Correction Officer recruits whom he then ordered to falsely claim that Mitchell had been the aggressor, and that Assistant Deputy Warden Gail Lewis participated in the cover-up. *See* Assistant Deputy Warden and Correction Department Captain Indicted In Connection With Cover-Up of Assault on a Rikers Island Inmate, *at* http://bronxda.nyc.gov/information/2007/case27.htm .

45.     Through all these cases and DOC's elaborate reporting system, the Supervisory Defendants have been made aware of the widespread practice by DOC staff of using excessive and/or unnecessary force to injure, and not restrain, inmates. The Department is aware of its failure to appropriate discipline staff who misuse force. They have also been made aware of the failures of DOC's Investigation Division to adequately investigate allegations of misconduct, a practice that causes further abuse. The Supervisory Defendants cannot credibly contend that they are unaware of the pattern of abuse that occurs with regularity in New York City jails and the failure of the Department to take sufficient measures to investigate and discipline this abuse.

### III.    The Incident on March 28, 2007

46.     In or about early March 2007, Mr. Shuford's housing area was closed and everyone in Mr. Shuford's housing area was transferred to another housing area, 5 Lower, in RNDC.

47.     On information and belief, one of the steady officers at 5 Lower, John Doe #1, relied on inmates to enforce discipline.

48. On information and belief, Doe #1 caused an inmate, "Vito," to be transferred to 5 Lower so that that Vito could serve as an inmate enforcer and sanctioned Vito's use of violence against other inmates.

49. Once transferred, Vito, with Doe #1's authorization, attempted to assert his control over 5 Lower.

50. In the dayroom on or about March 26, 2007, Vito's friend assaulted a friend of Mr. Shuford. A physical altercation ensued, but none of the correction officers entered the dayroom to break up the fight.

51. On or about March 27, 2007, Vito ordered Mr. Shuford out of his chair, to demonstrate his control and power. One or more of the Doe Defendants witnessed this but did nothing.

52. On or about March 28, 2007, in the dayroom, Vito sought to stop Mr. Shuford from taking a chair to sit on. Vito and other inmates who sided with him assaulted Mr. Shuford. Mr. Shuford was knocked to the ground and sustained a bleeding laceration.

53. Mr. Shuford left the dayroom to use the telephone.

54. Beaten and bloodied, bleeding from the back of his head, with his face swollen, Mr. Shuford made his telephone call in full view of the bubble where the Doe Defendants were present.

55. None of the Doe Defendants asked Mr. Shuford what happened.

56. Indeed, though Mr. Shuford was obviously injured, DOC officers refused his request to go to the clinic and informed him that he was required to stay in the housing area. For the next two days, not a single correction officer asked Mr. Shuford about his obvious injuries or sent him to the infirmary.

57. It was only on or about March 30, 2007, two days later, that a captain observed Mr. Shuford's still-obvious injuries and sent him to the infirmary.

58. The Doe Defendants sanctioned the assault on Mr. Shuford and failed to intervene to prevent the assault on, or prevent further injury to, Mr. Shuford.

59. By failing to intervene in order to stop this assault, the Doe Defendants demonstrated a deliberate indifference to a substantial risk of serious harm to Mr. Shuford.

60. Defendants acted sadistically and maliciously and demonstrated deliberate indifference toward Mr. Shuford's rights and his physical well-being.

61. As a result of the March 28, 2007 assault, Mr. Shuford suffered serious physical and emotional injuries, including multiple nasal fractures, a depressed left zygomatic arch fracture, and findings suggesting a fracture of the left inferior orbital rim and a possible fracture of the lateral aspect of the left maxillary sinus.

## IV. The Incident on April 15, 2007

62. In the evening of April 15, 2007, while Mr. Shuford was locked in his cell, defendant Officer Davis insulted plaintiff's mother, a DOC correction officer who was formerly assigned to RNDC, by calling her a "bitch."

63. Plaintiff, a 17-year-old teenager, was upset by this statement and verbally responded to Officer Davis through the closed cell door.

64. A few minutes later, Officer Davis opened plaintiff's cell.

65. Officer Davis ordered Mr. Shuford into the dayroom.

66. Once in the dayroom, without any justification or provocation, Officer Davis punched Mr. Shuford in the face with substantial force.

67. Officer Guice witnessed the altercation and did nothing to stop defendant

Davis's attack. Instead, Officer Guice asked Officer Davis whether he needed assistance. When Officer Davis told Officer Guice that he did not need assistance, Officer Guice left and the beating continued.

68. Defendant Guice failed to intervene to prevent the assault on, or prevent further injury to, Mr. Shuford.

69. By failing to intervene in order to stop this assault, defendant Guice demonstrated a deliberate indifference to a substantial risk of serious harm to Mr. Shuford.

70. In addition, Officer Sanders left her assigned post to cover Officer Davis's post while he was beating Mr. Shuford in the dayroom.

71. Officer Sanders did nothing to stop defendant Davis's attack. Defendant Sanders failed to intervene to prevent the assault on, or prevent further injury to, Mr. Shuford.

72. By failing to intervene in order to stop this assault, defendant Sanders demonstrated a deliberate indifference to a substantial risk of serious harm to Mr. Shuford.

73. Mr. Shuford did not provoke his beating nor did he conduct himself in any manner that would warrant the excessive force used against him.

74. Defendants acted sadistically and maliciously and demonstrated deliberate indifference toward Mr. Shuford's rights and his physical well-being.

75. Defendants delayed in securing medical attention for Mr. Shuford for the injuries he sustained due to Officer Davis's assault.

76. Eventually, Mr. Shuford was taken to the facility medical center where it was determined that he needed emergency medical health care. He was sent to Elmhurst Hospital Center.

77. As a result of the assault on or about April 15, 2007, Mr. Shuford suffered

serious physical and emotional injuries, including aggravating of the previous fractures to his facial bones, multiple nasal bone fractures, a left orbital fracture, and multiple cuts and bruises to his face and body.

## FIRST CLAIM FOR RELIEF
### March 2007 Incident
### 42 U.S.C. § 1983/Fourteenth Amendment
### (against City of New York, Supervisory Defendants and the Doe Defendants)

78. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

79. On or about March 28, 2007 Mr. Shuford was beaten by an inmate assailant and the Doe Defendants failed to intervene, as alleged above.

80. By reason of the foregoing, and by sanctioning, encouraging, and failing to prevent inmate assailants from assaulting, battering, and using gratuitous, excessive, brutal, sadistic, and unconscionable force, the Supervisory and Doe Defendants deprived plaintiff of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, secured by 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the Fourteenth Amendment to the United States Constitution to be free from gratuitous and excessive force.

81. The Supervisory and Doe Defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their employments as DOC officers and employees. Said acts by defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers. These defendants acted willfully, knowingly, and with the specific intent to deprive plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and the Fourteenth Amendment to the United States Constitution.

82. The Supervisory Defendants knew and/or should have known that the pattern of sanctioned inmate-on-inmate assaults described above existed in the City jails prior to and including the time of the assault on plaintiff. Their failure to take measures to curb this pattern of brutality constitutes acquiescence in the known unlawful behavior of his subordinates. The prevalence of these practices and general knowledge of their existence at the time of plaintiff's beating, and the failure of defendants to take remedial action despite the fact that the use of inmate enforcers had been persistently brought to their attention, constitutes deliberate indifference to the rights and safety of the inmates in their care and custody, including the inmate named as a plaintiff in this action. These defendants' conduct has been a substantial factor in the continuation of such violence and a proximate cause of the constitutional violations alleged in this complaint.

83. Defendant City, through DOC, and acting under the pretense and color of law, has permitted, tolerated and been deliberately indifferent to a pattern and practice of sanctioned inmate-on-inmate assaults. This widespread tolerance of correction officers' sanction of inmate assaults constitutes a municipal policy, practice or custom and led to plaintiff's assault.

84. By permitting, tolerating and sanctioning a persistent and widespread policy, practice and custom pursuant to which plaintiff was subjected to a brutal beating by an inmate assailant on March 28, 2007, defendant City has deprived plaintiff of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, secured by 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the Fourteenth Amendment to the United States Constitution to be free from gratuitous and excessive force.

85. As a direct and proximate result of the misconduct, abuse of authority and the policy, practice and custom detailed above, plaintiff sustained the damages hereinbefore

17

alleged.

## SECOND CLAIM FOR RELIEF
### April 2007 Incident
### 42 U.S.C. § 1983/Fourteenth Amendment
### (against City of New York, Supervisory Defendants and Defendants Davis, Guice, and Sanders)

86. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

87. On or about April 15, 2007 plaintiff was beaten by a correction officer, as alleged above.

88. By reason of the foregoing, and by assaulting, battering, and using gratuitous, excessive, brutal, sadistic, and unconscionable force, or failing to prevent other defendants from doing so, defendants Davis, Guice, and Sanders and the Supervisory Defendants deprived plaintiff of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, secured by 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the Fourteenth Amendment to the United States Constitution to be free from gratuitous and excessive force.

89. Defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their employments as DOC officers and employees. Said acts by defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers. These defendants acted willfully, knowingly, and with the specific intent to deprive plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and the Fourteenth Amendment to the United States Constitution.

90. The Supervisory Defendants knew and/or know that the pattern of physical abuse described above existed in the City jails prior to and including the time of the

assault on plaintiff. Their failure to take measures to curb this pattern of brutality constitutes acquiescence in the known unlawful behavior of their subordinates. The prevalence of these practices and general knowledge of their existence at the time of plaintiff's beating, and the failure of these defendants to take remedial action despite the fact that the misuse of force in City jails had been persistently brought to their attention, constitutes deliberate indifference to the rights and safety of the inmates in their care and custody, including the inmate named as a plaintiff in this action. These defendants' conduct has been a substantial factor in the continuation of such violence and a proximate cause of the constitutional violations alleged in this complaint.

91. Defendant City, through DOC, and acting under the pretense and color of law, has permitted, tolerated and been deliberately indifferent to a pattern and practice of brutality by correction officers. This widespread tolerance of correction officers' beating of inmates constitutes a municipal policy, practice or custom and led to plaintiff's assault.

92. By permitting, tolerating and sanctioning a persistent and widespread policy, practice and custom pursuant to which plaintiff was subjected to a brutal beating by a correction officer on April 15, 2007, defendant City has deprived plaintiff of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, secured by 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the Fourteenth Amendment to the United States Constitution to be free from gratuitous and excessive force.

93. As a direct and proximate result of the misconduct, abuse of authority and the policy, practice and custom detailed above, plaintiff sustained the damages hereinbefore alleged.

## PRAYERS FOR RELIEF

WHEREFORE, plaintiff requests that the Court grant the following relief jointly and severally against defendants:

1. Compensatory damages in an amount to be determined at trial for the physical and psychological injuries sustained by Mr. Shuford as a result of the events alleged herein.

2. Punitive damages in an amount to be determined at trial.

3. An order awarding plaintiff reasonable attorneys' fees, together with the costs of this action.

4. Such other further relief as the Court may deem appropriate.

Dated: February 3, 2009
       New York, New York

EMERY CELLI BRINCKERHOFF
& ABADY LLP

*/s/ Jonathan S. Abady/*
Jonathan S. Abady (JA 5147)
Debra Greenberger (DG 5159)
75 Rockefeller Plaza
New York, New York 10019
(212) 763-5000

THE LEGAL AID SOCIETY
Jonathan S. Chasan (JC 9018)
Mary Lynne Werlwas (MLW 6403)
199 Water Street, 6th Floor
New York, New York 10038
(212) 577-3530
*Counsel for Plaintiff*

20